IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| JUDITH AKIN,<br><br>        Plaintiff,<br><br>    vs.<br><br>LELAND DUDEK, Acting Commissioner of Social Security,[1]<br><br>        Defendant. | Case No. 24-cv-00500-DKW-KJM<br><br>**ORDER REMANDING DECISION OF ACTING COMMISSIONER OF SOCIAL SECURITY** |

Plaintiff Judith Akin appeals the Acting Commissioner of Social Security's denial of her application for disability insurance benefits, arguing that an Administrative Law Judge (ALJ) erred in (1) rejecting Akin's symptom testimony, (2) rejecting the opinions of two treating doctors, and (3) relying upon the opinions of two non-treating doctors. The Acting Commissioner opposes Akin's appeal, arguing that the ALJ both properly discounted her symptom testimony and weighed the opinions of the various doctors.

After carefully reviewing the record below and the parties' submissions, the Court finds that sufficient deficiencies in the ALJ's discussion of Akin's symptom

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Leland Dudek was automatically substituted as the party-defendant in this action upon his appointment as the Acting Commissioner of Social Security.

testimony require remand for further development.   In particular, on the current record, the ALJ has left unanswered or ignored matters, such as Akin's reports of pain to her treating providers, while addressing other matters that do little to move the needle in addressing the fundamental question here: whether Akin can consistently work an eight-hour day or any portion thereof.   Therefore, as more fully set forth below, the Court REMANDS this proceeding for further evaluation of Akin's symptom testimony and the medical evidence.

## BACKGROUND

### I.      Review of Disability Claims

A five-step process exists for evaluating whether a person is disabled under the Social Security Act (SSA).   20 C.F.R. § 404.1520.   First, the claimant must demonstrate that she is not currently involved in any substantial, gainful activity. *Id*. §§ 404.1520(a)(4)(i), (b).   Second, the claimant must show a medically severe impairment or combination of impairments that significantly limit her physical or mental ability to do basic work activities.   *Id*. §§ 404.1520(a)(4)(ii), (c).   Third, if the impairment matches or is equivalent to a listing in the governing regulations, the claimant is judged conclusively disabled.   *Id*. §§ 404.1520(a)(4)(iii), (d).

If the claimant's impairment does not match or is not equivalent to an established listing, the Commissioner makes a finding about the claimant's residual

functional capacity (RFC) to perform work. *Id*. § 404.1520(e). The evaluation then proceeds to a fourth step, which requires the claimant to show her impairment, in light of the RFC, prevents her from performing work she performed in the past. *Id*. §§ 404.1520(a)(4)(iv), (e), (f). If the claimant is able to perform her previous work, she is not disabled. *Id*. § 404.1520(f). If the claimant cannot perform her past work, though, the evaluation proceeds to a fifth step. *Id*. § 404.1520(a)(v), (g). At this final step, the Commissioner must demonstrate that (1) based upon the claimant's RFC, age, education, and work experience, the claimant can perform other work, and (2) such work is available in significant numbers in the national economy. *Id*. § 404.1560(c); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (explaining that, at step five, the burden moves to the Commissioner). If the Commissioner fails to meet this burden, the claimant is deemed disabled. 20 C.F.R. § 404.1520(g)(1).

## II.    **The ALJ's Decision**

On December 8, 2023, the ALJ issued a decision finding Akin not disabled for purposes of the SSA from the alleged onset date of March 16, 2020 through the date of the decision. Administrative Record (AR) at 17, 29. At Step One of the evaluation process, the ALJ determined that, except for one month in 2022, Akin had not engaged in substantial gainful activity after March 16, 2020. *Id*. at 19.

At Step Two, the ALJ determined that Akin had the following severe impairments: lumbar and thoracic degenerative disc disease; stage 3 chronic kidney disease; IgA nephropathy; fibromyalgia; depression; anxiety; and seronegative rheumatoid arthritis. *Id*. at 20. At Step Three, the ALJ determined that Akin did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the governing regulations. *Id*. at 20-23.

Before reaching Step Four, the ALJ determined that Akin had the RFC to perform "light work" with the following limitations:

> [S]he can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk six hours; she can sit six hours; she can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; she can frequently handle and finger with the bilateral upper extremities; she is precluded from exposure to atmospheric conditions; from operation of hazardous moving machinery and from work at unprotected heights. The claimant can understand, remember, and carry out simple instructions; she can no more than occasionally manage changes in the work setting; she is precluded from work requiring production pace, such as assembly line work; and from more than occasional work with the general public.

*Id*. at 23-28.

At Step Four, the ALJ determined that Akin was unable to perform any past relevant work. *Id*. at 28. At Step Five, the ALJ determined that there were jobs existing in significant numbers in the national economy that Akin could perform.

*Id*. at 29.   More specifically, a vocational expert stated that, in light of Akin's RFC, age, education, and work experience, she would be able to perform the jobs of price marker, mail sorter, and office helper.   This final determination resulted in the ALJ finding that Akin was not disabled for purposes of the SSA from March 16, 2020 through the date of the decision.   *Id*.[2]

## STANDARD OF REVIEW

A court must uphold an ALJ's decision "unless it is based on legal error or is not supported by substantial evidence."   *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).   "Substantial evidence is more than a mere scintilla but less than a preponderance."   *Id*. (quotation omitted).   Stated differently, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quotation omitted).   "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."   *Id.* at 679; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.").

---

[2]On September 26, 2024, the Appeals Council denied Akin's request for review of the ALJ's decision, meaning the ALJ's decision became the final decision of the Acting Commissioner. AR at 1.

In addition, a court may not reverse an ALJ's decision on account of an error that is harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quotation and citation omitted). In making this assessment, a court "look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Id*. at 1115.

## DISCUSSION

In her Opening Brief, Dkt. No. 8, Akin challenges the ALJ's decision in two principal areas. First, the ALJ's evaluation of Akin's symptom testimony, and, second, the ALJ's evaluation of the opinions of various doctors. For the reasons set forth more fully below, because the ALJ's evaluation of Akin's symptom testimony requires further development, the Court addresses only that issue. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (remanding to the ALJ while declining to reach an alternative ground for remand).

Akin argues that, with respect to her symptom testimony, the ALJ erred in evaluating various matters, including her activities of daily living, the medical record, her conditions, such as fibromyalgia, and the treatment she received. Dkt. No. 8 at 13-23. In response, the Acting Commissioner argues that the ALJ

6

properly discounted Akin's testimony because she was treated "conservatively", she engaged in various activities of daily living, her behavior at a hearing before the ALJ conflicted with her claims of mental limitations, and the ALJ considered Akin's alleged symptoms of fibromyalgia.  Dkt. No. 10 at 1-6.

In the Ninth Circuit, when considering a claimant's symptom testimony, an ALJ must, first, determine whether (1) objective medical evidence has been provided of an underlying impairment that may reasonably produce the symptom(s) alleged, and (2) the claimant is malingering.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-493 (9th Cir. 2015).  Here, the ALJ found that Akin's medically determinable impairments could reasonably be expected to cause her alleged symptoms.  AR at 24.  In addition, the ALJ made no finding that Akin was malingering.

As a result, in order for the ALJ to reject Akin's testimony about the severity of her symptoms, the ALJ was required to provide "specific, clear and convincing reasons for doing so."  *Brown-Hunter*, 806 F.3d at 493.  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*.  The reason for specificity is so a reviewing court can "conclude the adjudicator rejected the claimant's

testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Id*.

Here, in light of Akin's entire medical record, there is at least one glaring hole in the ALJ's evaluation of the symptom testimony: the failure to barely mention Akin's fibromyalgia condition or the symptoms of the same that occur repeatedly in her treatment records. As an initial matter, in the ALJ's decision, Akin's fibromyalgia is mentioned only in Steps Two and Three of the evaluation process—it is not mentioned in assessing Akin's RFC. *See* AR at 20-21. While the government asserts that the ALJ "detailed" symptoms associated with fibromyalgia, at best, that is literally all the ALJ did—simply state that Akin had the symptoms, without any further development of the same. This is contrary to the relevant social security guideline, which provides, in assessing RFC, "we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have bad days and good days." Social Security Ruling 12-2P, 2012 WL 3104869, at *6 (quotation omitted). Here, the ALJ, at the very least, failed to mention, let alone discuss, a critical aspect of Akin's longitudinal record: her repeated reports of pain to numerous medical providers over a period of years. Having thoroughly reviewed Akin's medical record, these reports are littered throughout, so often that citation

8

to all would be redundant.  *See, e.g.*, AR at 349, 426, 447, 976, 1011, 1015, 1166, 1247, 1253, 1294, 1317, 1406, 1481, 1490, 1541.  To be clear, while it is not this Court's role, in the first instance, to determine whether these reports provide support (or not) for Akin's symptom testimony, that does not mean that the evidence can be ignored or that no such determination is necessary.  The ALJ, therefore, must assess and consider the evidence of Akin's reports of pain and whether they provide any support to her symptom testimony.

While the above-mentioned deficiency is reason alone to remand because it has resulted in an incomplete analysis, the grounds relied upon by the ALJ to discount Akin's testimony are also unconvincing.  In no particular order, the ALJ determined that Akin was treated "conservatively with medications and physical therapy."  AR at 25.  However, as Akin observes, Dkt. No. 8 at 21, the ALJ never states what more aggressive treatment Akin could have pursued for one or more of her conditions.  Based upon the Court's review of the medical record, it is not clear a more aggressive approach was available.  *See* AR at 1545 (noting that a medication prescribed to Akin for rheumatoid arthritis was "pretty potent").  Notably, the medical record does not reflect that Akin was ever presented with a more aggressive treatment option beyond medication and physical therapy for the

9

medical conditions at issue.[3]  Rather, viewed *in toto*, the medical record indicates that Akin never turned down any viable treatment option.[4]

The ALJ further determined that there was no evidence of "hospitalizations, renal osteodystrophy, peripheral neuropathy, fluid overload syndrome, or anorexia."  AR at 25.  As for "hospitalizations," this is simply wrong.  *See* AR at 1493 (stating that Akin went to the "emergency room" "because her kidney function was dropping."); 1306 (stating that Akin was seen in an "ER" for "kidney infection").  As for the listed non-conditions, how and why they are relevant to assessing Akin's symptom testimony is unclear.  The ALJ provided no such explanation.[5]

The ALJ further determined that Akin's physical examinations, except in a few instances, were "consistently within normal limits" and/or "benign."  AR at

---

[3] Moreover, where a more intrusive treatment option was offered for a different condition, such as gallstones, Akin approved such treatment.  *See* AR at 1449, 1458.

[4] The ALJ also faulted Akin for "not seeking treatment consistent with the degree of subjective complaints."  AR at 26.  Again, the ALJ does not offer any suggestion of what further treatment Akin could have sought.  Moreover, as mentioned, the record reflects that Akin consistently and regularly visited numerous doctors, primary and specialist, to aid in the treatment of her many conditions.  In those records, there is no suggestion that some other treatment option was offered or otherwise made known to Akin.  Therefore, the Court disagrees that this is a basis for rejecting Akin's testimony.

[5] The ALJ also stated that Akin's "rheumatoid factor was negative[,]" indicating that this undermined her testimony.  *See* AR at 25.  As Akin explains, however, Dkt. No. 8 at 20, the "negative" rheumatoid factor appears to be consistent with Akin's documented condition of sero*negative* rheumatoid arthritis.

25-26. As notable, however, are Akin's equally consistent reports of pain throughout her body. In this light, the fact that the physical examinations of Akin were "benign" does not necessarily contradict Akin's symptom testimony when she reported pain at the same time as the allegedly benign examinations. *Cf. Smartt v. Kijikazi*, 53 F.4th 489, 499 (9th Cir. 2022) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (quotation omitted). How the ALJ reconciles these findings and reports is another issue that lacks clarity.

The ALJ further determined that Akin's activities of daily living were inconsistent with her symptom testimony. AR at 25. In doing so, the ALJ listed activities such as handling family obligations, moving, creating videos, preparing meals, blogging, spending time with others, shopping, driving, taking her son to school, and travelling on foot. *Id*. Other than simply stating that these activities were inconsistent with Akin's testimony, however, the ALJ neither explained why nor identified the specific testimony that was inconsistent. *See id*. This is relevant here because Akin never asserts total debilitation. Rather, among other things, Akin testified that her pain levels fluctuated and, while acknowledging that she could perform certain activities, friends and family would also do some of those tasks when she was unable. *See* AR at 66-69; *cf. Molina v. Astrue*, 674 F.3d

11

1104, 1113 (9th Cir. 2012) (finding that an ALJ did not err in discounting symptom testimony of an inability to "tolerate even minimal human interaction" where the claimant attended church and went shopping, among other things).[6]

Finally, the ALJ determined that, although Akin "alleged pain[,]" there was no evidence of "[m]uscle atrophy…." AR at 25-26. This determination, however, is not based upon any medical evidence in the record, which is presumably why the ALJ cites none. *See id*. It also, as Akin asserts, ignores her testimony. *See* Dkt. No. 8 at 23. Therefore, this too is no reason to discount Akin's testimony.

## **CONCLUSION**

The Court finds that the ALJ failed to provide specific, clear, and convincing reasons for determining that Akin's symptom testimony was inconsistent with the overall record. The ALJ further failed to discuss relevant aspects of Akin's longitudinal record. The Acting Commissioner's decision denying Akin's application for disability insurance benefits is therefore REMANDED for further

---

[6] In its response, the government also argues that the ALJ properly discounted Akin's testimony because her "behavior at the administrative hearing" conflicted with her purported mental limitations. Dkt. No. 10 at 4. On appeal here, though, Akin does not challenge the ALJ's determination regarding her *mental* limitations. Rather, it is the testimony about her *physical* limitations that is at issue, and it is not clear to the Court how Akin's behavior at the administrative hearing implicates the latter. Therefore, without further explanation, because this matter does not appear relevant to this appeal, it is not further addressed herein.

12

administrative proceedings consistent with this Order.  The Clerk of Court is directed to close this case.

    IT IS SO ORDERED.

    DATED: April 15, 2025 at Honolulu, Hawaiʻi.



Derrick K. Watson
Chief United States District Judge

---

*Judith Akin vs. Leland Dudek*; Civil No. 24-00500 DKW-KJM; **ORDER REMANDING DECISION OF ACTING COMMISSIONER OF SOCIAL SECURITY**